## OSWEGO COUNTY COURT.

### IN THE MATTER OF WILLIAM HENRY WRIGHT.

Where a *soldier* has been *honorably discharged*, under an order of the war department mustering the regiment in which he served, out of service, such discharge exempts him from the performance of further military duty, even if he stands as a drafted man in another company at the time of his discharge from the army.

A *court martial* is a court of special and limited jurisdiction. It is called into existence for special and temporary purposes, and when these purposes are attained, it is dissolved and disappears. No general duty or power, with respect to the collection of the *fines* is conferred upon the president of the court; and he is required to exercise such power as is given him in a specified way, and within a specified time.

The first warrant shall be drawn within thirty days after the fines have been imposed, and the same may be renewed, or a new one issued at any time thereafter, within two years from the time of imposing the fines.

A warrant against a person issued on the 25th day of June, 1867, reciting that the fine was imposed upon the 25th *day of April*, without specifying the year, is defective upon its face, and does not justify the holding the person fined under it.

HABEAS CORPUS issued out of the supreme court, directed to Henry Breed, constable, returnable before the county judge of Oswego county. The constable returned to the writ that he held the petitioner upon a military warrant for the collection of a fine imposed by a regimental court martial, and gave a copy of the warrant.

The petitioner answered the return of the officer, denying that he was legally detained by virtue of a warrant, as set forth in the return, and alleging facts to show that the court martial referred to had no jurisdiction to try and convict him, and that he was exempt from militia duty.

Case tried at the chambers of the judge, November 15, 1867.

S. N. DADA, *for petitioner.*

J. C. HUNT, *Judge Advocate, for military authorities.*

R. H. TYLER, County J. The evidence before me shows that the petitioner volunteered to serve in the U. S. army on the 25th day of August, 1864, at which time he was a resident of

tal town of Palermo, within the bounds of the 88th regiment
the district, N. Y. N. G., and that he served regularly in com-
pany I, 184th regiment of New York volunteers, until the 29th
day of June, 1865, when he was honorably discharged, under
an order of the war departmeut mustering the regiment out
of service.

After the petitioner returned home to Palermo, he was
notified to attend several parades of company G, 88th regi-
ment N. Y. N. G., of which he was claimed to be a private;
and also to attend several musters of the regiment.

A court martial was ordered for the trial of delinquents of
the regiment, which commenced its sitting on the 25th day
of April, 1867, at which the petitioner was returned as a
delinquent, and the usual summons was issued to the peti-
tioner to appear before the court martial on the 14th day of
May, 1867, which was served by leaving a copy at the resi-
dence of the petitioner in his absence from his home, and the
petioner never had any actual notice of the court martial
until after his case had been passed upon, and confirmed by
the brigadier general.

On the 14th of May, there was no appearance before the
court martial by the petitioner, and his case was continued
until the next day, when it was disposed of, in his absence,
by a fine of $20. The sentence was reported to the brigadier
general, and approved May 22, 1867; and on the 25th day
of June, 1867, the president of the court issued his warrant,
under his hand and seal, for the collection of the fines imposed
by the court martial, annexing a list, among which was the
name of the petitioner, which warrant recited that " at a
regimental court martiald, held on the 25th day of April, the
several delinquents named, were duly fined;" and then the
officer to whom it was directed, was commanded to collect
the fines in the form prescribed by the militia law, and was
dated June 25, 1867, and was renewed from time to time,
the last renewal October 30, 1867.

The evidence further shows, that the petitioner had never

enrolled himself as a volunteer in the N. G., and he had never been served with a notice that he had been drafted therein, and there was no evidence that he had ever been drafted, unless the return to the court martial was evidence of that fact. The question is presented, whether, upon these facts, and upon the warrant put in evidence, the officer is entitled to hold the petitioner longer in custody.

By the militia law now in force, all able-bodied white male citizens, and persons of foreign birth who shall have declared their intention to become citizens, pursuant to law, between the ages of eighteen and forty-five, residing in the state, are subject to military duty excepting certain classes; and among the persons excepted are those "who have been regularly and honorably discharged from the army or navy of the United States, in consequence of the performance of military duty in pursuance of any law of this state." Under this provision of the statute, it is very clear that the petitioner is not subject to military duty, nor was he at the time he was returned as a delinquent. But it is alleged that he was drafted into the National Guard, before he was discharged from the army, and being once a member of the militia, his discharge does not relieve him. The answer to this is, in the first place, there is no evidence that he was drafted before he was discharged, if there is any evidence that he was ever drafted at all; and it is admitted that he never volunteered. But if he stood as a drafted man at the time of his dicharge from the army, I am of the opinion that his discharge exempts him from the performance of further military duty.

But it is said that the question of the liabilty of the petitioner to do military duty, was necessarily involved in the trial by the court martial, and that the finding of that tribunal is conclusive until reversed on *certiorari*. There is some plausibility in the position, but I think it is nevertheless untenable. It was entirely a question of jurisdiction, and I am of the opinion that the finding of the court martial that it had jurisdiction, is not conclusive upon *habeas corpus*. The writ

of *habeas corpus* is designed as a searching and inquisitorial process, and although the warrant issued by the court martial, if legal on its face, would be a protection to an executive officer, it may be shown to be void by reason of a want of jurisdiction in the court from which it emanates. If it was the case of a final judgment or decree of a competent tribunal of civil or criminal jurisdiction, the rule of course would be different; but I do not regard the sentence of a court martial in that light, and my conviction is strengthened by the fact that the legislature were careful to provide that " no action shall be maintained against any member of a court martial or officer or agent, acting under its authority, on account of the imposition of a fine, or the execution of a sentence on any person, if such person shall have been returned as a delinquent, and duly summoned, and shall have neglected to appear and render his excuse for such delinquency, or show his exemption before such court." It seems to me that if the finding of the court, in the case of an exempt person, was conclusive in any event, this provision of the statute is obviously useless, because the judgment of the court would be a perfect protection of itself.

But there is another reason why the petitioner must be discharged from the custody of the officer, and that is, that the warrant by virtue of which the prisoner is held, is invalid upon its face. The only power found for issuing this warrant is contained in the statute, which provides that " the presidrnt of the court shall, within thirty days after the fines have been imposed, make a list of all the persons fined, and shall draw his warrant, under his hand and seal, directed to any marshal, sheriff or constable, thereby commanding him to levy such fines," &c.; and the officer has forty days from the receipt of the warrant to execute it, and " if any officer having a warrant for the collection of any fine, shall not be able to collect the fine within the time specified therein, then the officer issuing the warrant, may, at any time within two years from the time of imposing the fines, issue a new war-

Matter of Wright.

rant against any delinquent, or renew the former warrant from time to time, as may become necessary."

Now every lawyer understands that a court martial is a court of special and limited jurisdiction. It is called into existence for special and temporary purposes, and when these purposes are attained, it is dissolved and disappears. All its powers are, therefore, special and limited. No general duty or power, with respect to the collection of these fines, is conferred upon the president of the court, and he is *required* to exercise such power as is given him in a specified way, and within a specified time. The first warrant *shall* be drawn within thirty days after the fines have been imposed, and the same *may* be renewed, or a *new* one issued at any time thereafter, within two years from the time of imposing the fines. (*Militia Code*, §§ 225 *and* 246.)

This warrant against the petitioner was issued on the 25th day of June, 1867, and recites that the fine was imposed upon the 25th day of April, without specifying the year, and for aught that appears, it may have been April, 1865, which would have been more than two years prior to the issuing of the warrant; and certainly the president can find no power in the law for issuing his warrant after the expiration of two years from the time the fines were imposed, and if we are to *infer* that the fines were imposed on the 25th day of April, 1867, *then* the warrant was not issued until two months had elapsed, when the statute says it *shall* be done *within thirty days* after the fines were imposed. It seems to me that this warrant, which affects the liberty of the citizen, should show upon its face the time when the fine was imposed, and that such warrant was actually issued within the time within which the officer has the power to issue it; and the process failing to show this, I think that it is defective upon its face, and does not justify the holding of the petitioner in custody.

For the double reason, therefore, that the court martial had no jurisdiction of the person of the petitioner, and also

that the warrant upon which he is held is invalid upon its face, the petitioner must be discharged.

Ordered accordingly.